**RAILROAD COMMISSION OF TEXAS
et al., Appellants,**

v.

**HUMBLE OIL AND REFINING COM-
PANY et al., Appellees.**

No. 11575.

Court of Civil Appeals of Texas.

Austin.

Jan. 3, 1968.

Rehearing Denied Jan. 31, 1968.

Second Motion for Rehearing Denied
Feb. 21, 1968.

Crawford C. Martin, Atty. Gen., George M. Cowden, First Asst. Atty. Gen., A. J. Carubbi, Jr., Staff Legal Asst. Atty. Gen., Houghton Brownlee, Jr., Rex. H. White, Jr., Linward Shivers, Asst. Attys. Gen., for appellants.

Rogers & Sayers, Johnnie B. Rogers, Austin, for intervenors.

William H. Tabb, Dallas, James T. Nesbitt, Shreveport, La., McGinnis, Lochridge, Kilgore, Byfield, Hunter & Wilson, B. D. St. Clair, Austin, for appellees.

HUGHES, Justice.

This is a Rule 37 [1] case in which the Railroad Commission of Texas on August

---

1. We copy the following from the brief of the Commission to show the substance of this rule, its amendments and history and such other matters as the Commission deems important to its case:

"On November 26, 1919, the Railroad Commission adopted the first state-wide well spacing rule known as Rule 37. This rule provided that no well could be drilled nearer than 300 feet to any other drilling

29, 1966, issued a permit to Wiley Richard Lee to drill a first well for oil and gas on a .107 acre tract of land in the East Texas Oil Field in Gregg County "to pre-

or completed well, nor nearer than 150 feet to any property line. Further, the rule states that 'Rule 37 shall not, for the present, be enforced within the developed and defined oil fields known as the Gulf Coast Fields.'

One of the earliest Special Orders relating to the East Texas Field made no mention of well spacing. The order of July 2, 1931, superseding a like order of April 29, 1931, provided for the division of producing leases or properties in the East Texas Field into twenty (20) acre units and fractional parts thereof, called fractional units, and further provided for the allocation of production on a unit basis. The order contained no prohibition of development on the basis of subdivision of property but did provide that no division of tracts or leases after April 29, 1931, shall be allowed to increase the number of units and fractional units in the field. Additional provisions contained within this order definitive of the Commission's policy towards the East Texas Field at this time are Sections 14 and 15. They are as follows:

'14. * * * Irrespective of the number of wells on a unit or fractional unit, the daily allowable thereon shall not be more than 750 barrels, and such additional allowable as may be permitted hereunder shall be taken from wells upon such unit or fractional unit so as to avoid unequal withdrawals against offset wells.

15. The General Order of April 4, 1931, applying to the entire State, as modified by order of April 29, 1931, is hereby modified, as far as it relates to the East Texas field, and any conflicting provisions in said General Order shall yield to the provisions of this order with reference to the said East Texas field.'

The next Special Order of the Commission relating exclusively to the East Texas Field was issued September 2, 1931, becoming effective September 5, 1931. Section 2 of said order provides that spacing between wells should be no nearer than six hundred sixty (660) feet to any other completed or drilling well on the same or adjoining tract of land and no well shall be drilled nearer than three hundred thirty (330) feet to any property line; provided that the Commission, in order to prevent waste and to protect vested rights, shall and will grant exceptions permitting drilling within shorter distances. The Commission's policy towards the East Texas Field is further illustrated by this quote from the same provision of Section 2 of the September 5, 1931, order which provided:

'* * * It is not the intention of the Railroad Commission to repeal Rule 37 by this order, but only to provide a special rule applicable only in said East Texas field.'

Numerous other Special Orders amending Rule 37 as it applied to the East Texas Field were issued prior to the decision in the Sun case, supra, and the Commission's order of May 29, 1934. They are the orders of February 25, 1932, and January 31, 1933. These orders, with the exception of certain modifications deemed unimportant here, are substantially similar to the order of September 2, 1931.

On December 22, 1933, the Austin Court of Civil Appeals handed down its decision in Sun Oil Company v. Railroad Commission et al. [Tex.Civ.App.], 68 S.W.2d 609, affmd. [Bennett v. Sun Oil Co., Tex.], 84 S.W.2d 693, which stated in effect that after the original promulgation of Rule 37 by the Commission in 1919, property owners could not subdivide their property in such a way as to secure more wells than a tract would otherwise be entitled to. In effect, the Court held that Rule 37 attached state-wide and there could be no permits issued for tracts subdivided after November 26, 1919, anywhere in the State unless the tract complied with the Rule 37 spacing requirements. In response to this decision, the Commission promulgated its first rule pertaining to illegal subdivisions, commonly known as the 'Rule of May 29, 1934.' This order provides:

'IT IS ORDERED by the Railroad Commission of Texas that in applying Rule 37 (Spacing Rule) of state-wide application and in applying every special rule with relation to spacing in every field in this State no subdivision of property made subsequent to the adoption of the original spacing rule will be considered in determining whether or not any property is being confiscated within the terms of such spacing rule, and no sub-division of property will be regarded in applying such spacing rule or in determining the matter of confiscation if such sub-division took place subsequent to the pro-

vent confiscation and/or to prevent physical waste."

The validity of this permit was attacked by appellees Humble Oil and Refining Company by suit filed in the court below against the Railroad Commission and Wiley Richard Lee. Wiley Page intervened in the suit and is aligned with the defendants. Mobil Oil Corporation intervened and is aligned with Humble.

Humble and Mobil filed motion for summary judgment as did the Railroad Commission. The trial court granted the motion of Humble and Mobil and denied the motion of the Commission.

The facts with reference to the issue of confiscation are undisputed. They are:

A tract of land containing 22.5 acres in Gregg County was owned in fee by Mrs. Sallie Clary, Almer Lee Clary, and Mrs. Sallie Clary as guardian for Devotie Clary, a minor, in January, 1931, when it was leased by the owners to T. O. Ramsland for oil and gas purposes.

This 22.5 acre tract was subdivided into lots and a dedication of streets and alleys to the public was made by the owners on March 27, 1931, as shown by a map and plat filed for record in Gregg County on May 2, 1931.

The .107 acre tract, in suit, was conveyed by the owners to C. E. Schneider in fee by general warranty deed dated May 18, 1931, no mention of minerals or outstanding oil and gas lease being made in such deed. Schneider conveyed the fee to Stella Gray in 1935 and she conveyed the minerals thereunder to J. R. Ostrom later in 1935. Wiley Page holds under oil and gas leases executed in 1965 and 1966 by the successors in title of J. R. Ostrom.

Wiley Richard Lee is the agent for Wiley Page.

The East Texas Oil Field was discovered in October, 1930.

The Railroad Commission has but one point of error which is that the drilling permit was valid for the reason that the .107 acre tract was a legally subdivided tract. The basis for this conclusion is stated by the Commission in this language:

"Appellant Commission granted the subject permit under its long established policy governing subdivision of tracts in the East Texas Field created prior to the Commission's order of May 29, 1934. The Commission has always used the May, 1934, date as the date to be used to determine when an illegal subdivision occurred in the East Texas Field and the undisputed evidence in this case shows that the tract was created prior to May 29, 1934."

Whatever the Commission may have done in this respect is of no weight for the reason that the Supreme Court in Gulf Land Co. v. Atlantic Refining Company, 134 Tex. 59, 131 S.W.2d 73 (1939) held that a subdivision made in 1932 by which a 6.88 acre tract capable of development as a whole under Rule 37 as originally promulgated in 1919 was divided into six smaller tracts, one of which contained 2.35 acres on which a permit to drill a second well was sought was illegal as to such 2.35 acre tract since such tract was at such time subject to the spacing rule of the Commission, Rule 37, and an exception to this rule was required in order to drill to prevent confiscation. We quote from that opinion:

"When such 6.88-acre tract was subdivided, exceptions first became necessary

mulgation and adoption of the original spacing rule * * *'
It must be kept in mind that the tract here in question was created in May, 1931, prior to the first special field rule adopted in East Texas which contained

individual well spacing requirements (Order of September 2, 1931) and prior to the Railroad Commission's adoption of its illegal subdivision rule (May 29, 1934)."

to develop such subdivisions. Under such a record, there is no possible escape from the conclusion that, as a matter of law, the Commission violated its Rule of May 29th in granting this well permit to prevent the confiscation of property. As already shown, this permit is on a tract of 2.35 acres of land. This 2.35 acre tract was constituted a subdivision after Rule 37 became effective in this oil field, and as to this land. This 2.35-acre tract already has one well thereon. Also, such tract is a subdivision within the meaning of the Rule of May 29th. When the 6.88-acre tract out of which this 2.35-acre tract was subdivided is considered as a unit, no well is needed thereon to prevent confiscation. Under the plain and unambiguous language of the Rule of May 29th, the 2.35-acre tract, considered apart from the 6.88-acre tract, can have no rights to a well to prevent confiscation. Railroad Commission of Tex. v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.2d 967, 970. In the case just cited we clearly announced it as the law that under Rule 37, and the Rule of May 29th, subdivisions of property made subsequent to the promulgation of the original spacing rule should not be considered on the issue of confiscation. The Rule of May 29th so states in language too plain to admit of construction. We quote the following approved quotation from the opinion under discussion: 'It is manifest, therefore, that, where a situation which would circumvent the rule is created by voluntary act, acquiescence, or connivance of the parties after the rule has attached to the property, such situation cannot be asserted as a valid ground for exception to the rule. The parties, in that event, are relegated to their rights as they existed prior to the creation of such situation. [Humble Oil & Refining Co. v. Railroad Commission et al. [Tex.Civ.App.], 68 S.W.2d 625].'

Under the rule as stated in the above quotation, it is too plain to admit of debate that any right that this 2.35-acre tract can have to this well to prevent confiscation must be relegated to the rights of the 6.88-acre tract out of which it was subdivided subsequent to the spacing rule."

The Court also stated in such opinion that "subdivisions of land, as such, which have or hereafter may come into existence after Rule 37 became effective are not protected at all against confiscation."

Rule 37 became operative as to the parent 22.5 acre tract when it was leased for oil and gas purposes in 1931. Railroad Commission v. Richards, 336 S.W.2d 449, Tex. Civ.App., Austin. n. w. h., and the authority therein cited.

The Commission does not cite one case to sustain its position that the rule against voluntary subdivisions requiring exceptions to Rule 37 in areas where Rule 37 is applicable does not antedate the May 29, 1934 amendment of the Rule.

Strangely, it attempts to draw comfort from the decision in Brown v. Humble Oil and Refining Company, 126 Tex. 296, 83 S.W.2d 935, wherein the Court invalidated a permit to drill granted as an exception to prevent confiscation in 1933 on a three acre tract created in 1932, the Court saying:

"Where rule 37 is in force in a certain territory, a voluntary subdivision of a tract of land subject to development for oil and gas as a whole would not entitle the owner of said divided tract, or tracts, as a matter of right, to an exception of rule 37 on the ground of vested rights, because such act would destroy the rule and render the conservation laws a nullity."

Other cases in which this Court has held that Rule 37 prevented small tract owners from obtaining permits to drill as an exception to prevent confiscation in areas where the Rule was effective are: Smith v. Stewart, Tex.Civ.App., 68 S.W.2d 627, Aff. 83 S.W.2d 945, Sun Oil Company v.

Railroad Commission, 68 S.W.2d 609, Aff. Bennett v. Sun Oil Co., 84 S.W.2d 693, and Humble Oil and Refining Company v. Railroad Commission, Tex.Civ.App., 68 S.W.2d 625, writ dismissed.

These cases established the principle that voluntary subdivisions of land in areas where Rule 37 was in force into tracts requiring exceptions to the Rule were prohibited and illegal as a necessary corollary to Rule 37 and in order to prevent its destruction.

The order of May 29, 1934, merely put into words and made formal the rule prohibiting voluntary subdivisions which had been decreed by the courts.

This order of May 29, 1934, has been consistently applied to subdivisions created prior to its formal promulgation by the Commission. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, Tex.Sup.Ct., Shell Petroleum Company v. Railroad Commission, 133 S.W.2d 194, Tex. Civ.App., Austin, writ ref., Humble Oil and Refining Co. v. Railroad Commission, 99 S.W.2d 1052, Tex.Civ.App., Austin, writ ref.

The position of the Commission is insupportable in law or logic. Its claimed violation of Rule 37 as long interpreted by the courts cannot justify our acquiescence in or approval of such violation. The Commission cannot validly build a departmental construction based on repeated violation of decisions of our courts.

We hold that the Commission erroneously granted the permit in suit as an exception to prevent confiscation of vested rights.

Appellant Wiley Richard Lee pointing out that the Commission granted the permit herein to prevent waste as well as to prevent confiscation frankly states the permit must have been granted to prevent waste only because "The Commissions' only alternative (an exception to prevent confiscation) is clearly prohibited by Rule 37 and all the law construing such rule."

Appellant Lee states that he is convinced he was entitled to summary judgment. This is untenable for two reasons, Lee filed no motion for summary judgment and he filed an answer to appellees' motion for summary judgment in which he contended that fact issues were made sufficient to defeat such motion. An examination of this answer discloses that the fact issues sought to be raised pertain only to the question of whether Rule 37 was in effect in the area when this subdivision occurred, the contention being that such area was not then considered to be oil producing or having oil producing potential. Affidavits to this effect were attached.

It is our opinion that this answer did not raise an issue of material fact. We have held above that the execution of the oil and gas lease on the parent tract, as a matter of law, invoked Rule 37 as to such tract.

■ The record does not disclose that the issue of waste, as distinguished from confiscation, was considered by the Commission when this matter was before it or by the court below. Such question cannot be raised in this Court under these circumstances. State of California Dept. of M. Hyg. v. Bank of S. W. Nat. Association, 163 Tex. 314, 354 S.W.2d 576, Tex.Sup., Gulf Land Co. v. Atlantic Refining Co., supra.

Since it appears that this issue of waste has not been heard by the Commission, we, in affirming the judgment of the trial court, do so without prejudice to the right of Page to reapply to the Commission for a permit on the ground of physical waste.

The judgment of the trial court is affirmed as indicated.

Affirmed.

## ON MOTION FOR REHEARING

■ Although the Commission, in its brief, states that it granted the permit in suit to prevent confiscation, Appellant Lee

is correct in his statement that this record does not show that the issue of waste was not heard by the Commission. We grant the motion for rehearing by Appellant Lee to the extent that as to him this cause is reversed and remanded. If, however, it develops that the Commission did not consider the question of waste, then Lee's appeal to the Court should be dismissed without prejudice to the right of Lee to present this matter to the Commission. See Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, at p. 84.

This cause, as to appellant Lee is reversed and remanded.

Motion granted, cause reversed and remanded as to appellant Lee.