**RAILROAD COMMISSION et al. v. MILLER.**

**No. 9306.**

Court of Civil Appeals of Texas. Austin.

Sept. 23, 1942.

Motion for Rehearing Dismissed and Agreed Judgment Entered Oct. 31, 1942.

Gerald C. Mann, Atty. Gen., and Grover Sellers, E. R. Simmons, Cecil C. Rotsch and James D. Smullen, Asst. Attys. Gen., for appellant Railroad Commission of Texas.

Weeks, Hankerson & Surles, of Tyler, for appellants S. V. Guerin and D. W. George.

Rex G. Baker, of Houston, and Powell, Rauhut & Gideon, of Austin, for appellant Humble Oil & Refining Co.

Pollard, Lawrence & Reeves and W. Dewey Lawrence, all of Tyler, for appellee.

McCLENDON, Chief Justice.

Rule 37 case. Mrs. Faulk owned a tract of approximately 3 acres in the Hawkins field in Wood County, which field had a 20-acre spacing rule. The tract was L shaped and was made up of 3 contiguous tracts or sub-tracts containing approximately 1.5, 1.05 (referred to as the 1 acre tract), and .54 acres, respectively. The 1.5 a. tract had an east-west width of 189 feet and a north-south length of 344 feet, and constituted the north prong or stem of the L. The .54 a. tract occupied the eastern portion of the south or lower prong of the L. The 1 a. tract occupied the remainder of the L and adjoined the 1.5 a. tract (to the north) and the .54 a. tract (to the east). February 3, 1940, Mrs.

Faulk granted an oil lease to Miller covering the 1.5 a. tract. August 7, 1940, she granted to Manziel an oil lease covering the 1 a. and .54 a. tracts. This lease passed by mesne conveyances to Guerin as to the 1 a. tract and to George as to the .54 a. tract. January 6, 1941, Miller applied to the Commission for a permit to drill a well on the 1.5 a. tract to be located 60 feet N. and 60 feet W. of its S. E. corner. The Humble (Humble Oil & Refining Company) contested this application. February 12, 1941, the permit was granted for a well located in the center of the 1.5 a. tract. February 25, 1941, Humble filed a motion for rehearing which was granted and an order entered, after notice and hearing, on March 24, 1941, denying the permit. This suit was filed by Miller to set aside the order denying the permit and to enjoin interference with his drilling a well on the 1.5 a. tract and producing oil therefrom. Humble, Guerin and George intervened. The trial was to the court and the judgment set aside the order denying the permit, and perpetually enjoined interference with drilling and producing from a well located in the center of the 1.5 a. tract. The appeal is by the Commission, Humble, Guerin and George from this judgment.

Guerin and George each filed a separate application to drill on his respective leasehold, each of which was denied; but these orders of the Commission are not brought in review in this suit.

The trial court's judgment is predicated upon the conclusion that: The lease to Miller did not constitute a voluntary subdivision of the 3 a. tract; but constituted an agreement by all parties then interested therein that the first well drilled thereon should be drilled by Miller on the 1.5 a. tract, which agreement was valid and bound the Commission and adjacent leaseholders as well as the parties to the lease and their subsequent grantees.

■■■ The trial court made a fact finding to the effect that Mrs. Faulk "expressly" agreed that the well should be drilled on the 1.5 a. tract. There was no evidence of any agreement other than that which might be implicit in the facts that: (1) the 3 a. tract could be developed only under exception to Rule 37 to protect vested rights, and as such was entitled to but one well; and (2) the lease to Miller, by necessary implication, granted to him the right to have that well drilled upon the tract covered by his lease. We do not deem it

necessary to adjudicate the relative rights of Miller, on the one hand, and Mrs. Faulk and her grantees, on the other, as between themselves, with reference to the location of the well on the 3 a. tract. The proper location of the well was a matter within the exclusive jurisdiction of the Commission, under its delegated authority to administer the conservation laws of the State, untrammeled by any agreement, whether express or implied, by the owners of the 3 a. tract, or by the owners of adjacent leases, or by any or all of them. Mrs. Faulk had not the right to require the Commission to locate the well on any designated spot or portion of the 3 a. tract; and therefore she could not vest such right, by transfer, contract or otherwise in Miller. She could not grant to another a right which she, herself, did not possess. These conclusions are supported by the following authorities: Edgar v. Stanolind Oil & Gas Co., Tex.Civ.App., 90 S.W.2d 656, error refused; Magnolia Petroleum Co. v. Railroad Comm., Tex.Civ.App., 90 S.W.2d 659, modified on another point, 128 Tex. 189, 96 S.W.2d 273; Empire Gas & Fuel Co. v. Railroad Comm., Tex.Civ.App., 94 S.W.2d 1240, error refused; Railroad Comm. v. Magnolia Petroleum Co., Tex. Civ.App., 125 S.W.2d 398, error refused; Wencker v. Railroad Comm., Tex.Civ.App., 149 S.W.2d 1009, error refused.

■■■ Miller contends that his application invoked the jurisdiction of the Commission to grant the permit as a protection to the vested rights inhering in the owners of the entire 3 a. tract and not merely as a protection to his 1.5 a. tract. If this contention were valid, it would not avail Miller anything; because the Commission denied his application to locate a well upon his leasehold, which action is not reviewable by the courts, unless shown to be arbitrary—a question we later discuss. But the contention is not valid. The application sought only a permit to drill on the 1.5 a. tract, and the proper location of a well on the 3 a. tract was not involved. This is a necessary deduction from the holding in the Atlantic case (Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73) as expressly held in Shell Petroleum Corp. v. Railroad Comm., Tex.Civ. App., 133 S.W.2d 194, error refused, and Humble Oil & Refining Co. v. Potter, Tex. Civ.App., 143 S.W.2d 135.

■■■ It is stated in Miller's brief that "the uncontradicted evidence shows that

one well on any part of the three-acres will efficiently drain the entire three-acres *or the equivalent* (emphasis added) of all underlying oil, and thereby prevent the confiscation of the three acres, which was the basis of the application." If it were conceded that this is the effect of the un-contradicted evidence, and if the protection of the 3 a. tract were the only consideration involved in the proper location of the one protecting well, then it might be argued, with some force, that the only parties interested in the location were the owners or lessees of the 3 a. tract, and the refusal of the Commission to respect their direction as to the location would be arbitrary as having no substantial factual basis. This is of course assuming the correctness of the trial court's and Miller's interpretation of the effect of the Miller lease. But the protection of the 3 a. tract is not the only consideration involved in the location of the well on that tract. The general spacing pattern for the field is one well to 20 acres. Any well on a 3 a. tract would upset this pattern to an extent dependent upon the condition thereby created with respect to drainage from adjacent leases and incident rights to counteract excessive drainage from such adjacent tracts by further drilling. The Commission has the unquestioned jurisdiction to so locate the required protecting well as to create the least disturbance in the general drilling pattern and to reduce to a minimum the number of compensating wells which the invoked exception to Rule 37 would necessitate.

There is no merit in Miller's contention that the original order granting the permit was valid and that the subsequent order setting it aside and refusing the permit was invalid. The rehearing was had in literal compliance with the procedure prescribed by the Commission, and its jurisdiction to set aside the permit order was properly invoked. See Atlantic case, above. The effect of the latter order was to nullify the former and preclude predicating any rights thereon. The action of the Commission in denying the permit is not reviewable by the courts in the absence of a showing that Miller was entitled as a matter of law to have the protecting well located on his leasehold. Wencker case, above. Clearly no such showing was made.

In connection with his last above contention, Miller cites the following holding in the Century case (Railroad Comm. v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.2d 967) as interpreted by this court in the Lasseter case (Humble Oil & Refining Co. v. Lasseter, Tex.Civ.App., 120 S.W.2d 541, error dismissed), and later in Com. v. Magnolia Petroleum Co., Tex.Civ.App., 125 S.W.2d 398, 401, error refused: "Where, independently of the voluntary segregation, the larger tract, including the segregated tract, is entitled to an additional well in order to protect the vested rights of the owners of such larger tract to recover their fair share of the oil thereunder in place, the permit to drill on the segregated tract will be upheld. And this, although the application be made to drill only upon the voluntarily segregated tract and only by the owners of that tract, and be contested by the owners of the remaining portion of the larger tract."

If this language may properly be construed as holding that the jurisdiction of the Commission to determine the right of the unsegregated tract as a whole to a well or an additional well is invoked by application of the owner of the segregated tract for a permit thereon based only upon the rights attached to the segregated tract, such holding would be in conflict with the Atlantic case, above, as already shown. If the quoted language be susceptible of the construction that the jurisdiction of the Commission, in locating the requisite well upon the unsegregated tract, is an arbitrary one, and not subject to review even where shown as a matter of law to be improperly exercised, such construction would be in conflict with the decision in the Wencker case, above; and with a cardinal principle of law as held in the recent Trem Carr case (Railroad Comm. v. Shell, Tex. Sup., 161 S.W.2d 1022).

As already shown, however, it would be of no avail to Miller if such constructions were given to the Century case, and if those constructions were not affected by subsequent decisions; for the reason that the Commission has rescinded its first order granting the permit, in a rehearing proceeding in which its jurisdiction over the order was properly invoked and exercised.

The 3 a. tract, as a unit, is concededly entitled to one well to protect the vested rights of those in whom those rights inhere; the Commission has the potential jurisdiction to locate the well on the 3 a. tract to protect those rights; and can so

locate it whenever that jurisdiction is properly invoked. The Commission has not the power, however, to adjudicate as between the several claimants contested issues of title or other property rights. Nor would the court have that power in an appeal from a Commission order except by consent of the parties. Railroad Comm. v. Rau, Tex.Civ.App., 45 S.W.2d 413, error dismissed; Railroad Comm. v. Lamb, Tex. Civ.App., 81 S.W.2d 161; Altgelt v. Texas Co., Tex.Civ.App., 101 S.W.2d 1104, error dismissed.

The trial court's judgment is reversed, and judgment is here rendered for appellants dissolving the injunction and denying to Miller any of the relief sought in this suit. This judgment, however, is without prejudice to Miller or any other party to this suit to establish their rights and obtain appropriate relief to enforce them in a proper proceeding and forum.

Reversed and rendered.